J-S23028-26                    2026 PA Super 173

IN THE INTEREST OF: C.B.A.-B., A     :   IN THE SUPERIOR COURT OF
MINOR                            :         PENNSYLVANIA
                                           :
                                           :
APPEAL OF: C.B.A.-B., MINOR      :
                                           :
                                           :
                                           :
                                           :   No. 706 EDA 2026

Appeal from the Dispositional Order February 11, 2026
In the Court of Common Pleas of Monroe County Criminal Division at
No(s):  CP-45-JV-0000012-2026

BEFORE:   LAZARUS, P.J., MURRAY, J., and FORD ELLIOTT, P.J.E.[*]

OPINION BY MURRAY, J.:                           **FILED AUGUST 4, 2026**

C.B.A.-B. (Appellant), a juvenile, appeals from the dispositional order adjudicating him delinquent for theft by unlawful taking – immovable property, and ordering his placement in a secure treatment facility.[1]  After careful review, we affirm.

At the relevant time, 17-year-old Appellant lived with his sister and legal guardian (I.B.), as well as I.B.'s nine-year-old son.  The juvenile court detailed Appellant's previous encounters in the juvenile justice system:

> At the time the theft occurred, [Appellant] … was already involved with our Juvenile Probation Department.  Specifically, [Appellant] had three additional pending cases, two of which had been docketed in [the juvenile court].  In Case No. 133 [JV] 2025, in which [Appellant] was charged with criminal trespass, [Appellant] was on consent decree supervision.  In Case No. 218

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 3921(b).

JV 2025, [Appellant] made an admission to possession of a small amount of marijuana in Northampton County, after which the case was transferred to [the juvenile court following the Northampton juvenile court made] a finding of fact based on the admission. In the third case, which has not yet made its way to [the juvenile court], [Appellant] was charged with possession of drug paraphernalia in Northampton County.

Juvenile Court Opinion, 4/17/26, at 2 (some capitalization modified).

The instant case arises from a report made by I.B., alleging that Appellant stole money from I.B.'s PNC bank account using the Greenlight cell phone application (Greenlight App). The juvenile court detailed I.B.'s testimony concerning her use of the Greenlight App:

> [I.B.] is the primary account holder, and [Appellant] is the secondary cardholder. [I.B.] uses the Greenlight App to electronically send money to … [Appellant], on [his] Greenlight prepaid debit card[]…. The money is withdrawn from [I.B.'s] linked PNC bank account, placed in her Greenlight account, and then transferred by [I.B.] to the prepaid debit card[].
>
> Greenlight is a[ mobile] app[lication] for parents to designate debit cards to their children, and it allows for the transfer of funds from the parent's wallet to the kid's debit card when the parent deems that it's been earned. So, it could be rewards, or it could be used for trading stocks, or whatever the parent authorizes. So the parent will have the Greenlight [A]pp. [A p]asscode will be set up, whether it be Face ID or pin code, and at that time, the parent will need to source the debit cards by adding funds to their wallet. So, that wallet is connected to my PNC bank account…, and it's [an] instant transfer from my account to the Greenlight [A]pp, and then I would have to transfer the money again from th[e Greenlight A]pp onto the [debit] card.

*Id.* at 3 (quoting N.T., 2/10/26, at 9-10) (footnote and some paragraph breaks omitted).

I.B. had previously deactivated Appellant's prepaid debit card based on his "ongoing behavioral issues." *Id.* at 4.

> On January 18, 2026, [I.B.] checked her Greenlight account to [Appellant's] debit card and noticed several transactions, totaling $1,122, from her Greenlight account to [Appellant's] prepaid debit card between January 15th and 17th. [I.B.] did not make or approve these transactions, and no one else, aside from [Appellant], had the means and opportunity to access [I.B.'s] Greenlight account. Exhibits 1 and 2, the screenshots of [I.B.'s] Greenlight [A]pp[, which detailed the account activity on Appellant's prepaid debit card], were admitted during [I.B.'s] testimony …, and were used to show the transfer of money from her PNC bank account to the Greenlight account and the pass through to [Appellant's] prepaid debit card. Since [Appellant's] card had been deactivated, reactivating it would require a change in the settings of the primary account holder, and [I.B.] did not make such changes. [I.B.] tried to recall the transfer of money to [Appellant's] prepaid card. However, the recall did not work because the prepaid card had already been encumbered.

*Id.* (citations and footnote omitted; some capitalization modified).

After her discovery of this unauthorized Greenlight activity, I.B. discovered that her PNC bank card was missing. I.B. contacted Appellant's juvenile probation officer, and ultimately, the police. Appellant was arrested based upon I.B.'s report. During a search incident to his arrest, police found I.B.'s missing bank card, which "was issued by the bank from which [I.B.'s] money was stolen but was attached to a different account from which the money was taken." *Id.* at 2.

On January 28, 2026, the Commonwealth submitted written allegations against Appellant, alleging Appellant committed delinquent acts in violation of the Crimes Code (*i.e.*, unlawful use of a computer, computer theft, criminal

use of a communication facility, and identity theft[2]). On January 30, 2026, the Commonwealth filed a delinquency petition. In addition to the offenses previously identified, the delinquency petition alleged Appellant committed the delinquent acts of access device fraud[3] and theft by unlawful taking.

The juvenile court described what next transpired:

> Given the consent decree and other pending charges, [Appellant's] behaviors, the theft, [Appellant's] unlawful taking of [I.B.'s] bank card, and the fact that the incident was the proverbial last straw for [I.B.], [Appellant] was placed in detention. Following a hearing, [Appellant] was continued in detention, and an adjudication hearing was scheduled for February 10, 2026.

*Id.*

I.B. and Appellant's probation officer testified during the adjudicatory hearing. Relevantly, as detailed above, I.B. testified regarding her use of Greenlight to transfer money to Appellant's prepaid debit card. Through I.B.'s testimony, the Commonwealth introduced as exhibits the above-described screenshots taken from I.B.'s Greenlight account. Additionally, I.B. testified that Appellant called her while he was in detention and apologized to her for stealing money.

Appellant testified on his own behalf. Appellant admitted that he called I.B. to apologize "for all of the chaos," N.T., 2/10/26, at 33, but he specifically denied acknowledging that he stole money from I.B.

---

[2] 18 Pa.C.S.A. §§ 7611(a)(1), 7613(a), 7512(a), 4120(a).

[3] 18 Pa.C.S.A. § 4106(a)(1)(ii).

At the close of the hearing, the juvenile court found the Commonwealth had presented sufficient evidence to establish that Appellant committed the delinquent act of theft by unlawful taking. Thereafter,

> [s]ince [Appellant] and his history were known to [the juvenile c]ourt and [the] Juvenile Probation Office, [the court] moved immediately to disposition in this case and in case No. 218 [JV] 2025[,] in which … [Appellant] had previously made an admission. … Specifically, after hearing from counsel for [Appellant], the attorney for the Commonwealth, [Appellant's] probation officer, and [Appellant;] and following a review of the court memo prepared by our Juvenile Probation Office, a Youth Level of Service assessment, and records from [Appellant's] alternative school, [the juvenile court] adjudicated [Appellant] delinquent in this case…. [The court's disposition] placed [Appellant] at North Central Secure, a state juvenile facility.

*Id.* at 5-6 (some capitalization modified).[4, 5] Further, the juvenile court ordered Appellant to pay I.B. $1,122.00 in restitution. Appellant did not file a post-dispositional motion.

Appellant filed a timely notice of appeal on March 12, 2026. Appellant did not file a contemporaneous concise statement of errors complained of on appeal, as required by Pa.R.A.P. 1925(a)(2)(i). The following day, noting this defect, the juvenile court issued an order granting Appellant an extension of time in which to file his concise statement. Appellant filed his concise

---

[4] Additionally, the juvenile court adjudicated Appellant delinquent at case No. 218 JV 2025. At case No. 133 JV 2025, upon petition by the Commonwealth, the court removed Appellant from the consent decree program and scheduled an adjudicatory hearing.

[5] The dispositional order was docketed on February 11, 2026.

- 5 -

statement on the same date the court issued its order. The juvenile court subsequently filed a Rule 1925(a) opinion.

Appellant raises the following issues for review:

1. Whether it was error to admit hearsay through [I.B.] regarding account activity of the Greenlight App, in violation of Pa.R.E. 802….?

2. Whether it was error to admit the testimony of [I.B.] regarding account activity of her PNC bank account, in violation of Pa.R.E. 1002 …, where no exhibits related to the PNC account were presented?

3. Whether it was error to adjudicate [Appellant] delinquent based on the alleged admission in the absence of any admissible corroborating evidence, in violation [of] 42 Pa.C.S.A. § 6338(b) …?

Appellant's Brief at 4.

In his first claim, Appellant argues the juvenile court improperly admitted Exhibits 1 and 2 (screenshots taken from I.B.'s Greenlight App), and I.B.'s testimony about the exhibits. *Id.* at 20. According to Appellant, the exhibits and I.B.'s related testimony[6] constituted inadmissible hearsay. *Id.* Appellant claims "[t]he Commonwealth offered the screenshots precisely to

---

[6] The juvenile court correctly points out that Appellant lodged a hearsay objection only regarding the exhibits themselves, and did not challenge I.B.'s testimony regarding the exhibits. Juvenile Court Opinion, 4/17/26, at 10; *see also Commonwealth v. Smith*, 213 A.3d 307, 309 (Pa. Super. 2019) ("The absence of a contemporaneous objection below constitutes a waiver of the claim on appeal.") (citation omitted). Granting a liberal interpretation of Appellant's hearsay objection, the juvenile court limited its analysis of this issue to "the exhibits to which objections were specifically made and directly corresponding testimony." Juvenile Court Opinion, 4/17/26, at 10. We will do the same.

establish that these transfers occurred, that the funds reached [] Appellant, and that, therefore, he was the one who made them." *Id.* at 21.

Appellant also asserts the juvenile court misinterpreted our Supreme Court's decision in *Commonwealth v. Wallace*, 289 A.3d 894 (Pa. 2023), and the court incorrectly cited *Wallace* for the proposition that any computer-generated evidence contained in digital form is not hearsay. Appellant's Brief at 22. Instead, Appellant argues that the Greenlight account transaction history depicted in the exhibits "reflected transfers initiated by a user, identified account holders, and label indicating that funds were sent to [] Appellant's account." *Id.* at 23; *see also id.* at 24 ("Appellant maintains … those entries were created only because a human being affirmatively entered instructions into the application to move money from [I.B.'s] linked PNC account to another Greenlight account."). Appellant claims that in light of her theft claims, I.B. had no personal knowledge regarding the transfers. *Id.* at 28.

Further, Appellant contends the exhibits contained hearsay within hearsay. *Id.* at 29 (citing Pa.R.E. 805 (providing that "[h]earsay within hearsay is not excluded by the rule against hearsay if each part of the combined statements conforms with an exception to the rule.")). According to Appellant, both steps in the transfer process (*i.e.*, funds being withdrawn from I.B.'s PNC account, and the funds being transferred to Appellant's

account using the Greenlight App) required the Commonwealth to establish the applicability of an exception to the rule against hearsay. *Id.*[7]

We adhere to the following standard of review:

Questions concerning the admissibility of evidence are within the sound discretion of the trial court[,] and we will not reverse a trial court's decision concerning admissibility of evidence absent an abuse of the trial court's discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record. If in reaching a conclusion the trial court overrides or misapplies the law, discretion is then abused and it is the duty of the appellate court to correct the error.

*Commonwealth v. LeClair*, 236 A.3d 71, 78 (Pa. Super. 2020) (citation omitted).

As defined by the Pennsylvania Rules of Evidence, hearsay is "a statement that (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Pa.R.E. 801(c). Additionally, a statement is "a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion." Pa.R.E. 801(a). Hearsay is not admissible absent the applicability of a delineated exception. Pa.R.E. 802.

---

[7] Appellant did not object on the basis of Rule 805 during the adjudicatory hearing, and therefore, any hearsay within hearsay argument is waived. *See Smith*, 213 A.3d at 309; *see also* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.").

As our Supreme Court's decision in **Wallace** is central to both Appellant's argument and the juvenile court's reasoning, we begin by summarizing the decision. In **Wallace**, surveillance video recovered during an investigation into a shooting placed the appellant and his co-defendant in the area before the shooting. **Wallace**, 289 A.3d at 896. The video also depicted the appellant retrieving a firearm from a vehicle. **Id.** Significantly, the co-defendant was wearing a GPS ankle monitor on the date of the shooting, and police used data recovered from the monitor to "piec[e] together the whereabouts" of the appellant and his co-defendant during the relevant time period. **Id.**

Prior to trial, the appellant unsuccessfully litigated a motion *in limine* to exclude the GPS data from evidence. **Id.** When the Commonwealth introduced the GPS data during trial, the appellant objected, arguing the data constituted inadmissible hearsay. **Id.** at 897.[8] The trial court overruled the objection, concluding the GPS records were admissible under the business records exception to the rule against hearsay. **Id.** Alternatively, the trial

---

[8] Outside the presence of the jury, the Commonwealth offered testimony from the co-defendant's parole officer, as well as David Dethlefsen (Dethlefsen), an employee for the company that supplied the GPS monitoring equipment to the Pennsylvania Board of Probation and Parole. **Wallace**, 289 A.3d at 897. Dethlefsen testified that the company maintains records generated from its GPS tracking equipment. **Id.** at 898. Dethlefsen also explained that the records are generated without human intervention and compiled in the regular course of business. **Id.**

court opined that the GPS data did not constitute hearsay because it is not an assertion made by a person. *Id.* at 899.

Ultimately, our Supreme Court held the GPS data "is not hearsay because it does not constitute a statement made by a declarant, as outlined in Rule 801, as it is not an assertion (or the nonverbal conduct) of a person." *Id.* at 895; *see also id.* at 908. The *Wallace* Court explained that "the language in Rule 801 is clear: a statement is a written or oral assertion of *a person*." *Id.* at 904 (emphasis in original). Defining the relevant "assertion" as the GPS location data, the Court concluded the assertion was collected electronically rather than by a person. *Id.*

> Moreover, the *Wallace* Court reasoned that its
>
> conclusion that GPS data is not hearsay comports with the purpose of the rule against hearsay, especially as it pertains to a defendant's right to confrontation. … [H]earsay statements are generally inadmissible because their introduction robs a defendant of his ability to cross-examine the declarant to test his truthfulness or challenge his statements—but a machine cannot be cross-examined. Accordingly, the best way to advance the truth-seeking process with respect to such statements is not through cross-examination of the machine operator, but through the process of authentication.

*Id.* at 907 (internal citation, quotation marks, and brackets omitted).

In the instant case, Appellant generally objected to the admission of the screenshots as hearsay.[9] *See* N.T., 2/10/26, at 11 (Appellant's counsel

---

[9] Appellant did not challenge the authentication of the exhibits, nor did Appellant object on the grounds that I.B.'s testimony concerning the exhibits required specialized knowledge beyond that possessed by a lay witness.

- 10 -

stating, "I will object as hearsay. While [I.B.] may be able to authenticate her account history, I think the facts of these transfers are something that would be beyond her personal knowledge.").

As the juvenile court reasoned, "the challenged documents—screenshots of the Greenlight App—are not hearsay because … the data was collected electronically and the transaction histories were generated by a computer, not a person, in the ordinary course of business." Juvenile Court Opinion, 4/17/26, at 14. The screenshots merely depict the transaction history related to Appellant's Greenlight account. Contrary to Appellant's assertions, the screenshots do not, by themselves, suggest that Appellant is the individual who made the transfers. We agree with the juvenile court that the exhibits were automatically generated records, much like those at issue in *Wallace*. The transaction history was not made or compiled by a person, but rather was generated electronically through a cell phone application. Therefore, the exhibits do not constitute statements as defined in Rule 801, and are not hearsay. *See Wallace*, 289 A.3d at 899; *see also Commonwealth v. Grubbs*, 330 A.3d 444, 451 (Pa. Super. 2025) (concluding that cell-site location information, which is compiled electronically and not made by a person, cannot be hearsay).

Further, the juvenile court aptly considered and rejected Appellant's argument that I.B.'s testimony regarding the exhibits constituted hearsay:

> [I.B.'s corresponding] testimony itself was not hearsay. It covered only matters about which [I.B.] had personal

- 11 -

knowledge[,] as she set up, used, and owned the PNC bank account, Greenlight account, and Greenlight App, and prepaid [debit] cards[. I.B. also] independently determined that the amounts shown on the exhibits had been withdrawn from her bank account and then passed through to … [Appellant's] prepaid [debit] card, without her knowledge or permission. The account histories captured by the screenshots were produced autonomously by the Greenlight App. [I.B.] did not testify as to the details of a specialized or technical procedure. Further, as in **Wallace**, [Appellant] did not raise an authentication challenge and did not otherwise dispute the authenticity of the documents. Indeed, counsel for [Appellant] conceded, or all but conceded, that [I.B.] could authenticate her account history.

Juvenile Court Opinion, 4/17/26, at 14-15 (citations omitted; some capitalization modified).

Upon review, we discern no abuse of the juvenile court's discretion in admitting the exhibits. We further agree with the court's application of the **Wallace** decision to the instant case. Accordingly, Appellant's first claim merits no relief.

In his second claim, Appellant contends the juvenile court erred by permitting I.B. to testify that the funds identified in the Greenlight App were taken from her PNC bank account. Appellant's Brief at 31. Appellant argues that the best evidence rule required the Commonwealth to offer I.B.'s PNC account records and statements. **Id.** (citing Pa.R.E. 1002). According to Appellant, "the PNC bank records were closely related to a controlling issue because the Commonwealth was required to show that [I.B.] was deprived of the money in order to prove its case for theft by unlawful taking." **Id.** at 32 (some capitalization modified).

Appellant claims the fact that the funds were withdrawn from I.B.'s PNC account could only be established through production of her electronic statements or transaction history. *Id.* at 34. Appellant also argues the exhibits cannot satisfy Rule 1002 because Greenlight is a third-party application which summarizes transactions. *Id.* Additionally, Appellant contends the Commonwealth failed to establish that the original PNC records were unavailable. *Id.* In sum, Appellant argues, permitting I.B. to testify that the funds at issue were taken from her PNC bank account "effectively permitted the Commonwealth to prove the contents of an unproduced writing through oral testimony, the precise practice Rule 1002 prohibits." *Id.* at 35.

As set forth above, we review the juvenile court's evidentiary ruling to determine whether the court abused its discretion. *See LeClair*, *supra*.

The best evidence rule provides that "[a]n original writing … is required in order to prove its content unless," *inter alia*, "the writing … is not closely related to a controlling issue." Pa.R.E. 1002, 1004(d). Under our Rules of Evidence, "[a] 'writing' consists of letters, words, numbers, or their equivalent set down in any form." Pa.R.E. 1001(a). An "original" writing is defined as "the writing … itself or any counterpart intended to have the same effect by the person who executed or issued it. For electronically stored information, 'original' means any printout—or other output readable by sight—if it accurately reflects the information." *Id.* 1001(d).

Copies of an original writing may be designated as "counterparts" or "duplicates." "[A] 'counterpart' is included within Rule 1001(d)'s definition of an 'original' when it is 'intended to have the same effect as the writing or recording itself.'" ***Commonwealth v. Talley***, 265 A.3d 485, 531 (Pa. 2021) (quoting Pa.R.E. 1001(d)). By contrast, a "duplicate" is "a copy produced by a mechanical, photograph, chemical, electronic, or other equivalent process or technique that accurately reproduces the original." Pa.R.E. 1001(e). "Despite its subordinate designation, duplicates are not disfavored under the modern rule…." ***Talley***, 265 A.3d at 531. "A duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate." Pa.R.E. 1003.

Here, there is no dispute the transaction histories depicted in the exhibits constitute "writings" under Rule 1001(a). Thus, the best evidence rule applies if the writings are "closely related to a controlling issue." Pa.R.E. 1004(d). "[A] close relation under Rule 1004(d) exists when the content of a writing is 'operative,' or when the content is 'dispositive' of a controlling issue." ***Talley***, 265 A.3d at 533 (citing Pa.R.E. 1002, Cmt.); ***see also id.*** ("A writing's mere relevance to a controlling issue is not enough."). "In the context of a criminal case, this often means that the best-evidence rule applies to a writing only if the Commonwealth must prove the contents of the writing … to establish the elements of its case." ***Id.*** (citation omitted).

We pause briefly to revisit the content of Appellant's argument. The gist of Appellant's claim is that the exhibits were inadmissible under the best evidence rule, because the Commonwealth instead should have offered I.B.'s PNC records. Appellant then analyzes whether the PNC records, *not the proffered exhibits depicting the Greenlight App transaction histories*, are closely related to a controlling issue. ***See, e.g.***, Appellant's Brief at 34 (asserting that the Commonwealth was required to produced I.B.'s PNC account transaction history or electronic statements, "not [her] paraphrase of what they allegedly showed"). Appellant fails to address whether the exhibits are counterparts or duplicates of the original Greenlight transaction histories. In sum, Appellant's claim that the Commonwealth should have offered an *entirely different form of evidence* is not a proper best-evidence challenge.

Importantly, the Commonwealth did not offer the exhibits to establish that the funds transferred to Appellant's prepaid debit card were withdrawn from I.B.'s PNC account. Instead, the exhibits detailed the series of withdrawals from and deposits to Appellant's Greenlight account. The fact that the funds had been withdrawn from I.B.'s PNC account was not established until she provided additional testimony to confirm that the amounts of those withdrawals mirrored the amounts taken from her personal bank account, and which she did not authorize.

As the juvenile court concluded,

> there was simply no need for records from [I.B.'s] PNC bank account because the Commonwealth was not trying to prove the

- 15 -

content of [I.B.'s] PNC bank statements. The issue was whether [Appellant] stole money from [I.B.], not whether funds were in [I.B.'s] bank account, what funds were there, or what her bank statements showed. [I.B.] opened, owned, and controlled her PNC bank account (and Green[l]ight account and the Greenlight [A]pp) and was competent, capable, and qualified to testify, without any documentary backup, that money was taken from that account without her knowledge or permission. The best evidence rule does not require … that [I.B.] or the Commonwealth provide bank statements to demonstrate that money was removed from her account. At most, the absence of supporting or backup documents goes to the weight of [I.B.'s] testimony …, not its admissibility.

Juvenile Court Opinion, 4/17/26, at 15-16. We agree with the juvenile court's analysis and conclusion. Because Appellant's argument (*i.e.*, the Commonwealth was required to offer *additional* evidence) is not consistent with the best evidence rule, his second claim lacks merit.

In his third claim, Appellant argues the juvenile court failed to apply the *corpus delicti* rule. **See** Appellant's Brief at 36-41. Citing 42 Pa.C.S.A. § 6338, Appellant asserts that I.B.'s testimony concerning Appellant's alleged apology during a phone call was not, in itself, sufficient to support his adjudication. Appellant's Brief at 39-40. Appellant characterizes the statements he made during the phone call as "ambiguous" at best. **Id.** at 39-40.

Appellant again challenges the exhibits' admissibility, and contends that without proper documentary evidence establishing the unauthorized transfer of funds from I.B.'s PNC bank account to an account controlled by Appellant, the Commonwealth failed to prove the elements of theft by unlawful taking.

*Id.* at 39. Further, Appellant points out that the debit card found during the search incident to his arrest—though belonging to I.B.—was not the card related to the alleged delinquent acts. *Id.* at 40.

Application of the *corpus delicti* rule is an evidentiary ruling. **See Commonwealth v. Hernandez**, 39 A.3d 406, 410 (Pa. Super. 2012). As such, we review the trial court's decision for an abuse of discretion. **See LeClair**, **supra**.

> Section 6338(b) of the Juvenile Act provides as follows:
>
> A child charged with a delinquent act need not be a witness against or otherwise incriminate himself. An extrajudicial statement, if obtained in the course of violation of this chapter or which could be constitutionally inadmissible in a criminal proceeding, shall not be used against him. Evidence illegally seized or obtained shall not be received over objection to establish the allegations made against him. A confession validly made by a child out of court at a time when the child is under 18 years of age shall be insufficient to support an adjudication of delinquency unless it is corroborated by other evidence.

42 Pa.C.S.A. § 6338(b). "Simply put, the Commonwealth cannot convict a defendant [or adjudicate a juvenile delinquent based] solely upon their confession." **Interest of K.D.-Z.**, 330 A.3d 831, 838 (Pa. Super. 2025) (citation omitted).

> This Court has explained the *corpus delicti* rule as follows:
>
> The *corpus delicti* rule places the burden of proof on the Commonwealth to introduce extrajudicial admissions into evidence. To do so, the Commonwealth must establish by independent evidence that a crime has in fact been committed. The commission of the crime must be proven by a preponderance of the evidence in order for a confession to be admissible.

- 17 -

> The purpose of the *corpus delicti* rule is to guard against the hasty and unguarded character which is often attached to confessions and admissions and the consequent danger of a conviction where no crime has in fact been committed. Where the requirements of the *corpus delicti* rule have not been met, a case cannot be submitted to the finder of fact.

*Id.* (citations omitted); *see also Commonwealth v. Dewald*, 317 A.3d 1020, 1035 (Pa. Super. 2024) ("The *corpus delicti* is literally the body of the crime; it consists of proof that a loss or injury has occurred because of the criminal conduct of someone." (citation omitted)).

Further,

> [e]stablishing the *corpus delicti* rule in Pennsylvania is a two-step process. The first step concerns the trial judge's admission of the accused's statements, and the second step concerns the fact finder's consideration of those statements. For the statement to be admitted, the Commonwealth must prove the *corpus delicti* by a preponderance of the evidence. For the statement to be considered by the fact finder, the Commonwealth must establish the *corpus delicti* beyond a reasonable doubt.

*Dewald*, 317 A.3d at 1035 (citation and brackets omitted).

Instantly, as the juvenile court states in its opinion, Appellant did not raise a *corpus delicti* objection, at his adjudicatory hearing, when I.B. testified concerning Appellant's alleged confession. Juvenile Court Opinion, 4/17/26, at 18; *see also* Pa.R.E. 103(a) (providing that to preserve a claim of error regarding the admission of evidence, the record must reflect a timely objection, motion to strike, or motion *in limine*, and the specific ground must be stated); Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."). Indeed, Appellant lodged

no objections during the relevant portion of I.B.'s testimony. In his closing argument, Appellant's counsel argued the alleged confession had a "severe credibility issue," N.T., 2/10/26, at 36, but did not argue I.B.'s testimony was inadmissible under the *corpus delicti* rule. *Cf. **Commonwealth v. Chambliss***, 847 A.2d 115, 121 (Pa. Super. 2004) (concluding the appellant did not waive his challenge under the *corpus delicti* rule by failing to raise a timely objection, where the appellant's counsel challenged the admissibility of the confession during closing argument, prior to the fact finder's deliberations). We therefore agree with the juvenile court that Appellant's final issue is waived.

Even if Appellant had properly preserved his claim, we would conclude it lacks merit for the reasons stated by the juvenile court:

> The *corpus delicti* of theft by unlawful taking is that a person unlawfully took property of another with the intent to deprive the owner of the property—the unlawful taking of property due to criminal conduct. The Commonwealth satisfied this showing before [I.B.] testified that [Appellant] apologized for stealing her money.
>
> … [B]efore the apology/admission was admitted, the Commonwealth presented evidence that without the knowledge, permission, consent, or approval of [I.B.], money had been unlawfully taken from her PNC bank account and passed through her Greenlight account via the Greenlight App to the prepaid debit card she had set up for [Appellant], and then spent. Standing alone, this evidence established the *corpus delicti* of theft. But this evidence did not stand alone. In addition, the prepaid card, which had been deactivated, was reactivated to allow the theft to occur. This also occurred without the knowledge or consent of [I.B.] Moreover, at the time the money was taken, the only other person who had the means and opportunity to access [I.B.'s] phone, through which the Greenlight App could in turn be

accessed[,] … was [Appellant]. Further, when [Appellant] was arrested[, I.B.'s] missing PNC bank card was found in his jacket pocket. He did not have permission to have or use that card. This evidence was clearly sufficient [to establish,] beyond a reasonable doubt[,] that the crime of theft by unlawful taking had occurred. It was also strong circumstantial evidence that [Appellant] committed the crime.

Juvenile Court Opinion, 4/17/26, at 19 (citations omitted; some capitalization modified).

We additionally emphasize that Section 6338(b) prohibits sole reliance on a juvenile's confession. 42 Pa.C.S.A. § 6338(b) ("A confession validly made by a child out of court … shall be insufficient to support an adjudication of delinquency **unless it is corroborated by other evidence**.") (emphasis added); *see also Interest of K.D.-Z.*, 330 A.3d at 838. As the juvenile court aptly noted, Appellant's adjudication was supported by more than just his confession to I.B., and we have rejected Appellant's evidentiary challenges to the corroborating evidence. Accordingly, even if Appellant had preserved a *corpus delicti* challenge before the juvenile court, it would lack merit.

Based upon the foregoing, we affirm the juvenile court's dispositional order adjudicating Appellant delinquent and ordering his placement in a secure facility.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/4/2026